# EXHIBIT A

**STATE OF MICHIGAN**

**IN THE 22nd CIRCUIT COURT FOR THE COUNTY OF WASHTENAW**

PITCAIRN FRANCHISE DEVELOPMENT,
LLC, a Michigan Limited Liability Company,

       21-000254-CB

     Plaintiffs,

                  CASE NO. 2) ⟵     ⟵ CB

v.

                  HON.   JUDGE ARCHIE C. BROWN

JTH TAX, LLC, a Virginia limited liability
company,

     Defendant.

---

PEAR SPERLING EGGAN & DANIELS, P.C.
BY:   Jeremy C. Kennedy (P64821)
Attorneys for Plaintiff
24 Frank Lloyd Wright Drive, Suite D-2000
Ann Arbor, MI 48105
(734) 665-4441

---

FILED IN Washtenaw County Trial Court; 3/4/2021 6:34 PM

*There is no other pending or resolved civil action arising out
of the transaction or occurrence alleged in the Complaint. This matter is within
the jurisdiction of the business court, as it involves a dispute over a franchise
agreement, and other matters falling within the scope of MCL 600.8031, et seq.*

                Jeremy C. Kennedy (P64821)

**VERIFIED COMPLAINT, ▓▓▓▓▓▓▓ AND REQUEST FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

    NOW COMES the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, by and

through its attorneys, PEAR SPERLING EGGAN & DANIELS, P.C., and for its Verified

Complaint states as follows:

**INTRODUCTION AND OVERVIEW**

    1.    This is a dispute between an area developer franchisee, Pitcairn Franchise

Development, LLC, and its franchisor, JTH Tax, LLC d/b/a Liberty Tax Service concerning

Pitcairn's right to renew its area developer agreement. The parties entered into that agreement in 2008 under which Pitcairn recruited and serviced individual "unit franchisees" to operate as Liberty Tax Service offices in an exclusive area around the Philadelphia metropolitan area. The agreement had a term of 10 years, and provided that it could be renewed at the end of that term on materially similar terms and conditions to those of the original ADA. Instead of allowing Pitcairn to renew the existing agreement, Liberty materially changed the terms of the renewal agreement and eviscerates Pitcairn's rights under the original ADA. Pitcairn accordingly seeks a declaration that the existing agreement requires Liberty to renew the 2008 agreement, as well as monetary and/or injunctive relief.

## PARTIES, JURISDICTION AND VENUE

2.     Plaintiff, Pitcairn Franchise Development, LLC (herein "Pitcairn") is a Michigan limited liability company organized under the laws of the state of Michigan and doing business in Washtenaw County Michigan.

3.     Pitcairn acquired its rights in the Area Developer Agreement from Peter Ziolkowski (herein "Ziolkowski"), Pitcairn's managing member.

4.     Defendant, JTH Tax, LLC, d/b/a Liberty Tax Service (herein "Liberty") is a Virginia limited liability company with its principal place of business located in the Commonwealth of Virginia, and doing business in Michigan.

5.     JTH Tax, LLC is the successor in interest to JTH Tax, Inc.

6.     The actions giving rise to this Complaint involve a dispute between a franchisee and a franchisor arising out of the franchise agreement.

7.     This court has subject matter jurisdiction as the amount in controversy exceeds $25,000.00.

8.     This court has subject matter jurisdiction as this case involves a dispute arising under the Michigan Franchise Investment Law ("MFIL").

9.     Venue is proper as Pitcairn is a Michigan company that does business in Washtenaw County.

10.     This action meets the criteria set forth in MCR 600.8301 *et seq.* to be assigned to the business court.

## COMMON ALLEGATIONS

11.     Plaintiff hereby reasserts, realleges, and incorporates by reference Paragraphs 1-10 as if fully set forth herein.

12.     Liberty franchises individuals and small businesses to provide retail tax preparation and other services to the general public.

13.     Those franchisees will be referred to here as "unit franchisees." Unit franchisees pay Liberty an initial fee, typically $40,000, for the right to open a Liberty office, and then pay it a royalty, typically 14 percent of gross revenues received for services.

14.     Unit franchises gain most of their business through word-of-mouth and referral from previous customers. Unit franchises also do a significant amount of business through walk-up business.

15.     Upon information and belief, in 2003, Liberty's founder, Chair and CEO, John Hewitt, launched an Area Developer ("AD") program under which Liberty sold, for substantial fees, exclusive and perpetual rights to a portion of the franchise fees and royalties of unit franchises within designated areas in the United States (the "Development Areas").

16.     Upon information and belief, Liberty launched the program with the objective of raising a significant amount of money.

3

17.     Upon information and belief, development areas sold for anywhere from $100,000 to over $3,000,000.00.

18.     Upon information and belief, Liberty intended to grant the Area Developer Agreement ("ADA") rights in "perpetuity" in order to raise the needed money.

19.     Upon information and belief, Liberty agreed that the ADAs would be renewed, so long as the AD performed limited development and support services.

20.     Ziolkowski was interested in investing in an ADA, but was concerned because the language of the ADA called for a 10-year term; Ziolkowski did not want to enter into an ADA if it could be terminated or substantially changed at the end of that time; he wanted to secure the rights for himself and his heirs.

21.     Ziolkowski expressed his concerns to Mark Johnson, Liberty's Vice President of Area Development, at a dinner they had in 2007.

22.     Johnson responded that the ADA would be the same agreement upon renewal except for clerical changes, and explained that John Hewitt had said that the agreements were "perpetual."

23.     Ziolkowski also asked Liberty's Kelly Wyatt whether the renewal would be on the same terms as the initial agreement. Mr. Wyatt confirmed that it would.

24.     In reliance upon the contractual language of the ADA and those assurances, Ziokowski paid $924,000.00 to purchase the ADA at issue here (the "2008 ADA"), which granted him the right to develop 57 franchise areas in metropolitan Philadelphia, as well as the rights to half of the initial franchise fees and royalties of a unite franchisee in his area. A copy of the ADA is attached hereto as Exhibit A.

25.     The 2008 ADA was assigned to Pitcairn in 2014.

4

26.     Ziolkowski's territory under the ADA included parts of Bucks County and Philadelphia County in Pennsylvania, as well as Kent County and New Castle Count in Delaware.

27.     Upon information and belief, Liberty realized that it could not charge the substantial fees it was demanding if the agreement could be terminated or changed after ten years; in Ziolkowski's case, for example, Liberty would have priced the rights much lower if the ADA could be changed.

**The Terms of the 2008 ADA**

28.     The 2008 ADA had a ten-year term and provided for Pitcairn to receive fifty percent (50%) of unit franchisee initial fees, royalties and certain other payments. It also encouraged Pitcairn to sell a certain number of franchises each year ("Minimum Requirements"). (Ex. A). For example, the 2008 ADA called for two (2) unit franchises to be in operation by April 30, 2009.

29.     If Pitcairn did not meet its Minimum Requirements, Liberty had the right to buy back and remove from Pitcairn's area the number of unsold franchised territories by which it had fallen short. For example, if Pitcairn was required to have sold ten franchises and only had eight, Liberty could buy back two undeveloped franchise territories.

30.     The Minimum Requirements provision was set forth in Section 4.1 of the 2008 ADA:

> 4.1 Minimum Requirements. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories (the "Minimum Requirements"). . . . If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those

5

Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purpose of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering in this Agreement or more current data available to Liberty. (Ex. 1, § 4.1 emphasis supplied.)

31.     The 2008 ADA's renewal provision states at Section 8.2:

**8.2 Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and Conditions in such agreement, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.
(Ex. 1, § 8.2).

32.     The plain language of this section states that if the Area Developer wishes to renew

"this Agreement," it may do so upon notice.

33.     "This Agreement" plainly means the then current ADA, the 2007 ADA.

34.     Section 8.2 further makes a distinction between the first renewal of "this

Agreement," meaning the 2008 ADA, and later, or "future" renewals.

6

35.     Upon information and belief, the use of "this Agreement" in the second sentence of Section 8.2 refers to the 2008 ADA or the first renewal of same.

36.     In contrast, "future Area Development Agreements," those after the first renewal, would take place on Liberty's "then current form" of AD Agreement.

37.     The plain language of Section 8.2 meant that the only changes to the renewal would be in the *form* of the agreement, such as clerical changes for dates and the development schedule, not substantive changes.

38.     If Liberty had wanted to make substantive changes in the first renewal of the ADA, Liberty would have stated that the terms and conditions of future agreements could be changed.

39.     In fact, Liberty's in unit franchise agreements contained a renewal clause that stated "Other terms and conditions may vary," language that does not appear in the 2008 ADA.

40.     Finally, the reference to "provisions of services to Liberty similar to those in this Agreement" was included to provide for the possibility of additional products or services.

**Pitcairn's Performance under the ADA.**

41.     Over the years, Pitcairn has consistently been in the top five of all ADs nationally; in 2015, the last year of published rankings, it was ranked third by Liberty among the largest ADs.

42.     According to Faith Leek, Liberty's Regional Director who oversaw Pitcairn, Pitcairn did an excellent job of supporting its franchisees.

43.     Brent Turner, Liberty's current CEO, has praised Pitcairn's work to Ziolkowski and other area developers.

7

44.     Pitcairn has developed a strong reputation and considerable good will with its unit franchisees, with other ADs, and with Liberty itself, and looked forward to renewing the 2008 ADA.

**The New ADA**

45.     Liberty provided to Pitcairn a Franchise Disclosure Document ("FDD") that contained the form renewal agreement ("New ADA"), and told Ziolkowski that it would be forwarding the final agreement for execution imminently.

46.     The New ADA was materially different from the 2008 ADA.

47.     Liberty, among other things, made a material change to the Minimum Requirements, making them significantly more onerous to Pitcairn. The new language read as follows:

> 4.1 Minimum Requirements. As described and set forth in Schedule B, Area Developer will be required to meet the Active Office Goal and the Royalty Revenue Goal for each Fiscal Year (collectively the "Minimum Requirements"). A Fiscal Year shall mean each fiscal year of Liberty (including any partial Fiscal Year) ending on April 30.
> If Area Developer does not meet the Active Office Goal, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the Active Office Goal was not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Active Office Goal for that year, Liberty's notice will designate which Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Franchise Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees and Royalties paid with respect to any current or future franchisee within the specified Franchise Territories and such franchisees will no longer deemed Franchisees for the purposes of this Agreement.

48.     The New ADA's Section 4.1 imposes both an "Active Office" goal, meaning a requirement to have open, revenue-producing offices, and a "Royalty Revenue Goal," meaning a dollar goal.

8

49.     The New ADA further permits Liberty to remove active, *revenue-producing* Franchise Territories from the AD's area without compensation, if the AD does not meet the Active Office Goal, in contrast to the 2008 ADA, which limited Liberty's power to delete Franchise Territories to "unassigned" – or undeveloped – territories.

50.     Equally significant, the language stating that deletion of territories, with compensation to Ads, was the "sole remedy" for failure to meet Minimum Requirements was eliminated.

51.     This change is carried through in Section 7.3(c) of the New ADA, which provides that Liberty may terminate the AD Agreement if the Area Developer "fails to perform any obligation under this Agreement" and does not cure within 30 days of notice of default.

52.     Under the New ADA, Liberty may terminate the Agreement if the Area Developer fails to meet the Active Office Goal or Royalty Revenue Goal.

53.     Finally, the New ADA reduced the term from 10 to six years, thereby drastically truncating the value of the development rights.

54.     Upon information and belief, the sole purpose of the New ADA was to eliminate area developers entirely.

55.     By November of 2017, Pitcairn, having previously informed Liberty of its intent to renew its ADAs, was in arbitration with Liberty over the renewal of the 2007 ADA.

56.     Pitcairn and Liberty agreed to take no further action on the 2008 ADA until the issues regarding the 2007 ADA were resolved.

57.     On February 5, 2021 arbitration over the 2007 ADA concluded.

58.     On February 6, 2021 Liberty informed Pitcairn that it was terminating the 2008 ADA, and that Pitcairn would not be permitted to renew the 2008 ADA.

9

59.     Pitcairn should have been permitted to renew the 2008 ADA upon the terms and conditions stated therein, i.e., on materially the same terms as contained in the 2008 ADA.

## COUNT I
## DECLARATORY JUDGMENT

60.     Plaintiff reasserts, realleges, and incorporates by reference Paragraphs 1-60 of this Complaint as if fully set forth herein.

61.     The dispute between Pitcairn and Liberty regarding Pitcairn's right to renew the ADA upon the terms and conditions presented in the 2008 ADA form an actual controversy.

62.     Pursuant to MCR 2.605, Pitcairn is entitled to a judgment declaring its rights.

63.     The renewal provision of the ADA states that the Pitcairn may renew "this Agreement."

64.     Despite this, Liberty released Revised Agreements with materially different terms contained in it.

65.     The Revised Agreements include the following material changes:

A.     Paragraph 3.3 of the Revised Agreements does not specify the percentage of fees or royalties payable to area developers and it should provide for the same 50% compensation as the original area developer agreement. Specifically, the Revised Agreements remove the area developer's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised Agreements require area developers to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores.

B.    Paragraphs 3.15 and 3.16 were added, which include the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the area developer, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement

C.    Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from area developers and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals.

D.    Paragraph 8.1 was amended to reduce the term of the Revised Agreements from ten years to six years and

E.    Paragraph 8.8 was added to impose liability on the area developer for any attorney's fees Liberty Tax incurred in enforcement of the Revised Agreements or its successful defense of such an action by the area developer.

66.    Pursuant to MCR 2.605, Pitcairn is entitled to a declaratory judgment stating that it has the right to renew the ADA upon the terms and conditions stated in the original 2008 agreement, and not upon the materially different terms presented by Liberty.

WHEREFORE, the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, hereby respectfully reqeusts that this Honorable Court grant it relief on Count I and declare that Pitcairn

11

has the right to renew the 2008 ADA on materially similar terms as are contained in the 2008 ADA.

## COUNT II
## TEMPORARY RESTRAINING ORDER

67.    Plaintiff hereby reasserts, realleges and incorporates by reference Paragraphs 1-67 of this Complaint as if fully set forth herein.

68.    For the reasons stated above, unless Liberty is enjoined and the termination letter is not enforced, Pitcairn will be irreparably harmed by the loss of client confidence, loss of goodwill, loss of business reputation, and possible collapse of its business entirely.

69.    Pitcairn has no adequate remedy at law.

70.    Pitcairn is likely to succeed on the merits of this case.

71.    The balance of harm weighs in favor of Pitcairn, as their damage is irreparable, while Liberty would notice no conceivable change in its current position from the status quo.

72.    Any delay in the issuance of a temporary restraining order until the hearing on a preliminary injunction will result in irreparable harm to Pitcairn, and see its customer base erode.

WHEREFORE on Count II, the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, hereby respectfully requests that this Honorable Court enter a Temporary Restraining Order immediately enjoining Liberty from terminating the 2008 ADA.

## COUNT III
## BREACH OF THE AREA DEVELOPMENT AGREEMENT - WRONGFUL
## TERMINATION

73.    Plaintiff hereby reasserts, realleges, and incorporates by reference Paragraphs 1-73 as if fully set forth herein.

74.    The 2008 ADA's renewal provision states at Section 8.2:

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and Conditions in such agreement, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

75.     On February 6, 2021 Liberty sent a letter to Pitcairn terminating the 2007 ADA and the 2008 ADA, basing that termination on the results of arbitration over the 2007 ADA, claiming that the 2008 ADA was not being renewed because Pitcairn did not provide notice of its intent to renew 180 days before the 2008 ADA expired, and it failed to meet the other conditions precedent to renewal. (Ex. B).

76.     Liberty cited no other reason for its refusal to allow Pitcairn to renew the 2008 ADA, nor did it state what conditions precedent to renewal Pitcairn failed to meet.

77.     This decision is utterly without legal support, as the arbitration concerned the 2007 ADA, and the 2008 ADA was not subject to the arbitration.

78.     Further, not only was the 2008 ADA not at issue in arbitration, there is not even an arbitration clause in the 2008 ADA.

79.     Liberty's ability to terminate the 2008 ADA was limited to certain specific causes, pursuant to Section 8.3 of the 2008 ADA.

80.     Section 8.3(b) provides a list of reasons for which Liberty is allowed to terminate the 2008 ADA, such making material misrepresentations on biographical disclosures, violating

state or federal franchise or antitrust laws, making false claims about the earnings of the franchise, and similar violations. (See Ex. A).

81. Pitcairn did not take any action that meet the criteria for immediate termination of the 2008 ADA.

82. Thus the basis to terminate Pitcairn, as cited by Liberty Tax in the February 6, 2021 letter, was not a proper basis for termination of the 2008 ADA.

83. Liberty breached the 2008 ADA by wrongfully terminating the agreement and refusing to allow Pitcairn to renew it on terms materially similar to the terms in the original agreement.

84. As a direct and proximate result of Liberty's breach, Pitcairn has been damaged in the amount of its lost future royalties for the term of the new contract and any consequential damages due to the wrongful termination.

WHEREFORE on Count III, the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, hereby respectfully requests that this Honorable Court grant the following relief:

a. An Order requiring Specific Performance that Liberty reinstate and/or renew Pitcairn's 2008 ADA;

b. Award any and all money damages to which Pitcairn is entitled as a natural and foreseeable consequence of Liberty's actions

c. Award Pitcairn its costs and expenses incurred as a result of fifing this lawsuit; and

d. Such other relief as this Court may see fit to award in law or equity.

## COUNT IV
## BREACH OF THE AREA DEVELOPMENT AGREEMENT – FAILURE TO PROVIDE RENEWAL AGREEMENT UNDER THE SAME TERMS

85. Plaintiff hereby reassert, reallege, and incorporate by reference Paragraphs 1-85 as if fully set forth herein.

14

86.     The 2008 ADA's renewal provision states at Section 8.2:

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and Conditions in such agreement, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

87.     Liberty's actions with regarding to the Agreements have made it impossible for Pitcairn to renew the 2008 ADA, in violation of the terms of the Agreement.

88.     Pitcairn was never provided with the right to enter into a new agreement by Liberty.

89.     Liberty received proper notice of an intent to renew for the 2008 ADA.

90.     Liberty has failed to timely provide an opportunity to Pitcairn to renew the 2008 ADA.

91.     Liberty's failure to timely provide proper renewal agreements has prevented Pitcairn from exercising its right to renew the 2008 ADA.

92.     This failure is a material breach of the 2008 ADA by Liberty.

93.     Instead, Liberty has only permitted renewals with Revised Agreements with materially different terms contained in it from the 2008 ADA.

94.     The Revised Agreements include the following material changes:

    A.     Paragraph 3.3 of the Revised Agreements does not specify the percentage of fees or royalties payable to area developers and it should provide for the

15

same 50% compensation as the original area developer agreement. Specifically, the Revised Agreements remove the area developer's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised Agreements require area developers to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores.

B.    Paragraphs 3.15 and 3.16 were added, which include the ability for Liberty Tax to deduct amounts allegedly owed to Liberty Tax from payments to the area developer, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement

C.    Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from area developers and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals.

D.    Paragraph 8.1 was amended to reduce the term of the Revised Agreements from ten years to six years and

E.    Paragraph 8.8 was added to impose liability on the area developer for any attorney's fees Liberty Tax incurred in enforcement of the Revised Agreements or its successful defense of such an action by the area developer.

95.    As a direct and proximate result of Liberty's breach, Pitcairn has been damaged in the amount of its lost future royalties for the term of the new contract and any consequential damages due to the wrongful termination.

WHEREFORE on Count III, the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, hereby respectfully requests that this Honorable Court grant the following relief:

a. An Order requiring specific performance of the 2008 ADA and requiring that Liberty reinstate and/or renew Pitcairn's 2008 ADA;

b. Award all money damages to which Pitcairn is entitled as a natural and foreseeable consequence of Liberty's actions

c. Award Pitcairn interest, costs and attorneys' fees incurred as a result of filing this lawsuit; and

d. Award Pitcairn such other relief as this Court finds them to be entitled to obtain in law or equity.

WHEREFORE, the Plaintiff, PITCAIRN FRANCHISE DEVELOPMENT, LLC, by and through its attorneys, PEAR SPERLING EGGAN & DANIELS, P.C. hereby demands that this Honorable Court enter a verdict in its favor on all counts and grant it the following relief:

a. Declare that Pitcairn has the right to renew the 2008 ADA on materially similar terms as are contained in the 2008 ADA;

b. Enjoin Defendant from terminating the 2008 ADA;

c. Award all money damages to which Pitcairn is entitled as a natural and foreseeable consequence of Liberty's actions

d. Award Pitcairn interest, costs and attorneys' fees incurred as a result of filing this lawsuit; and

e.  Award Pitcairn such other relief as this Court finds them to be entitled to obtain in law

or equity.

I swear or affirm that the above statements are true to the best of my knowledge.



Peter Ziolkowski, Member
PITCAIRN FRANCHISE DEVELOPMENT, LLC

Respectfully Submitted,

PEAR SPERLING EGGAN & DANIELS, P.C.

Dated: March 4, 2021                      BY:
                                              Jeremy C. Kennedy (P64821)
                                          Attorneys for Plaintiff
                                          24 Frank Lloyd Wright Drive, Suite D-2000
                                          Ann Arbor, Michigan 48105
                                          (734) 665-4441
                                          jkennedy@psedlaw.com

18

# EXHIBIT A

FILED IN Washtenaw County Trial Court; 3/4/2021 6:34 PM

# AREA DEVELOPER
# AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us") licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

1.   **SERVICES.**

   1.1   **Area Developer Services.**

   (a)   Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

   (b)   All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

   1.2   **Support Services.**

   (a)   As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

   (b)   At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c)     Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding.  These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d)     Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2.  At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete.  Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations.  Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e)     Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.  However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3     **Personal Involvement**.  Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4     **Reports**.  Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2.     EXCLUSIVITY

2.1     **Exclusivity**.  Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in <u>Schedule A</u> (the "Territory").  This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees.  As indicated on <u>Schedule A</u>, the Territory has been divided into sub-

2



territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2    **Non-Area Developer-Proposed Franchisees**.  If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer.  Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

3.    **FEES AND COMMISSIONS.**

3.1    **Initial Fee**.  Area Developer will pay Liberty $924,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2    **Initial Franchise Fee**.  Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement.  Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3    **Franchise Royalties**.  Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty.  The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store.  "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4    **Demand for Payment**.  Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5    **Fee for Franchisee Prospects**.  From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory.  If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads.  If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6    **Fee for Internal Sales**.  If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

7-07 Ex B Area Developer Agreement



the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee.  Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material**.  Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8 **Terminal Services**.  Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker**.  From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above.  For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10 **Payment**.  With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month.  In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest.  Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit.  Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11 **Late Fees**.  Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**.  From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**.  Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.



## 4.   MINIMUM AREA DEVELOPER PERFORMANCE.

4.1   **Minimum Requirements**.  Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30.  The Minimum Requirement is set forth in Schedule B.  If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year.  Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete.  Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement.  This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects.  Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A.  For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5.   FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1   **Disclosure**.  In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet.  From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any.  Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular.  If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty.  Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws.  Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

7-07 Ex B Area Developer Agreement

5

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims.** Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations.** Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments.** Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity.** Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

6. **CONFIDENTIALITY.**

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this



Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3   **Return of Information.**   Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7.   NON-COMPETE AND NO SOLICITATION.

7.1   **Non-Compete.**

(a)   **In-Term.**   Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b)   **Post-Term.**   Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2   **No Solicitation.**

(a)   **In-Term.**   Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b)   **Post-Term.**   Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax



preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8. TERM AND TERMINATION.

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or



(iii)     Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv)     Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4     **No Refund of Initial Fee**.  Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5     **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement.  Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

9.     **MISCELLANEOUS.**

9.1     **Relationship**.  Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party.  The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2     **Intellectual Property Ownership**.  Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system.  To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty.  Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system.  Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3     **Trade and Domain Names**.  Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity.  Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.  Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of

7-07 Ex B Area Developer Agreement

9

domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. We may assign this Agreement to an assignee who agrees to remain bound by its terms. We do not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us. If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

d. You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided

7-07 Ex B Area Developer Agreement

10



that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity.** Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment.** From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Area Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill.** You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law.**

a. **Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

b. **Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and

7-07 Ex B Area Developer Agreement

11



personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

    **c.   Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

    **d.   Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

    **e.   Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

    9.9    **Severability.** If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

    9.10    **Notices.** Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you.

    9.11    **Burdens and Benefits.** This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

    9.12    **Entire Agreement.** This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation,

statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13  **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14  **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15  **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.  DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.  Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.  Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.  AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

Area Developer: PETER ZOLKOWSKI   Entity Number: 5126

Type: Sole Proprietor   (Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.

## SIGNATORS/GUARANTORS:

By: _____
      (Signature)

PETER ZOLKOWSK1
      (Printed Name)

Title: _____

Address: 850 WATERSIDE DR.

Ann ARBOR, MI 48105

Ownership Percentage: 100 % (See note below)

By: _____
      (Signature)

_____
      (Printed Name)

Title: _____

Address: _____

_____

Ownership Percentage: ____ % (See note below)


By: _____
      (Signature)

_____
      (Printed  Name)

Title: _____

Address: _____

_____

Ownership Percentage: ____ % (See note below)

By: _____
      (Signature)

_____
      (Printed Name)

Title: _____

Address: _____

_____

Ownership Percentage: ____ % (See note below)


**LIBERTY TAX SERVICE**

By: _____
      John T. Hewitt, President/CEO

Effective Date: 2/29/08


*Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.

7-07 Ex B Area Developer Agreement

14

Schedule A

**TERRITORY**

The counties of :

**Philadelphia DMA – (PART OF): including**

Part of Bucks County, PA:  Including:
PA290
PA373
PA372
PA289
PA376
PA293
PA137
PA365
PA366
PA055
PA036
PA004
PA017
PA028
PA377

Philadelphia County, PA
Kent County, DE
New Castle County, DE

which shall be divided by JTH Tax, Inc. into 57 Franchise Territories.

7-07 Ex B Area Developer Agreement



Schedule B

## MINIMUM REQUIREMENTS

a.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for ten total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for fourteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for eighteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-five franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-eight total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j.  For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2018 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.



**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Section 9.4 is clarified to also indicate that you may add minority owners to the Area Developer Agreement, or the entity that owns it, providing a change of control does not occur, and not pay a transfer fee. You may also amend the ownership of the Area Developer Agreement into an entity that you control without payment of a transfer fee, provided that your outstanding balance on your note payable to Liberty Tax Services is less than 50% of the original purchase amount of $924,000.

2. A Change of Control is defined as Peter Ziolkowski reducing his ownership to less than 51%.

3. Liberty will provide Area Development training within 45 days of a written request to do so and apply reasonable criteria in evaluating whether proposed transferee(s) have successfully completed the course. In the event that Liberty fails to provide such training within this time period, then the transfer can take place but transferee will be obligated to undertake such training when it is offered in the future

Area Developer:  Peter Ziolkowski

By: _____
      Peter Ziolkowski

LIBERTY TAX SERVICE

By: _____
      John Hewitt, CEO

Date: _____2 / 29 / 08_____

# EXHIBIT B

FILED IN Washtenaw County Trial Court; 3/4/2021 6:34 PM

DocuSign Envelope ID: 9EE9A88B-7BEE-4A83-A8D9-A0465667698F



February 6, 2021

**Via UPS**
Pitcairn Franchise Development LLC
Peter Ziolkowski
5014 Walnut Creek Dr.
Suite 200
Ann Arbor, MI 48105

Re:   **Non-Renewal of Area Developer Agreements**
      **AD Entity 5126**

Dear Peter Ziolkowski,

        As you know, the Area Developer Agreements by and between Pitcairn Franchise Development LLC, Peter Ziolkowski and JTH Tax LLC d/b/a Liberty Tax Service expired on December 31, 2017 and February 29, 2018 (collectively, "Area Developer Agreements"). Pursuant to Arbitrator Peter Kupelian of the American Arbitration Association Decision dated February 5, 2021, which is a final, binding arbitration decision, you failed to notify Liberty in writing at least 180 days prior to the expiration of each of the Area Developer Agreements of your intent regarding renewal, as required by Section 8.2 of each of the Area Developer Agreements, and you further failed to meet the remaining conditions precedent for renewal.

        Therefore, effective immediately, the Area Developer Agreements are hereby non-renewed such that, effective immediately, you shall no longer retain any rights to the territories as listed on Schedule A of each of the Area Developer Agreements.  Please be reminded that you are bound by your post-termination duties under the Area Developer Agreements, including but not limited to, the covenant not to compete.

                              Yours truly,
                              **JTH TAX, LLC d/b/a**
                              **LIBERTY TAX SERVICE**

                              Brent Turner
                              **Chief Executive Officer**

cc:    Ted DeMarino